IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

OTIS FISHER,  )
             )
    Plaintiff,  )
             )
v.           ) Civil Action No. 3:10CV486-HEH
             )
CAROLYN NEALE, et al.,  )
             )
    Defendants.  )

## MEMORANDUM OPINION
(Granting in Part and Denying in Part Defendants' Motion to Dismiss)

This is a civil rights action filed against various employees of the Northern Neck Regional Jail ("NNRJ"). It is presently before the Court on the Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed on July 29, 2010. The Defendants assert that Plaintiff's action for damages under 42 U.S.C. § 1983 should be dismissed because (1) the Defendants are entitled to qualified immunity; (2) Plaintiff has not pleaded facts sufficient to state an Eighth Amendment claim for deliberate indifference; and (3) Plaintiff failed to state a First Amendment claim because Plaintiff has no constitutional right to grievance procedures.

For the reasons stated below, the Defendants' Motion (Dk. No. 2) will be granted in part and denied in part. With respect to Plaintiff's Eighth Amendment claim against Defendants Neale, Hickey, Hull, and Turner, the Defendants' Motion will be denied. As to Defendants Sudduth and Frazier, the Motion will be granted without prejudice. With

1

respect to Plaintiff's First Amendment claim against Defendants Sudduth and Hall, the Defendants' Motion will be denied.

## I. BACKGROUND[1]

Plaintiff was arrested on or about July 21, 2007. At the time of his arrest, Plaintiff contends that he suffered from a broken neck and injuries to his left hand and wrist.[2] Plaintiff was transported in this condition to Riverside Tappahannock Hospital. From there, he was transferred to the Medical College of Virginia Hospital ("MCV").

MCV discharged Plaintiff on July 25, 2007 with directions to follow up with MCV's Neurosurgery Clinic within approximately three weeks. Plaintiff was also prescribed medication, instructed to wear an ASPEN Collar, and directed to obtain therapy for his injuries. Plaintiff apparently remained in custody during this period and was eventually removed to NNRJ.[3]

Plaintiff alleges that he continued to suffer "extreme and excruciating pain" in his neck and wrist. He contends in his Complaint that the Defendants, who are employees at NNRJ, failed to set a follow-up appointment for Plaintiff as directed by the treating physician at MCV.

On August 2, 2007, Plaintiff contends that he passed out at a court hearing as a result of his pain. Defendants Captain Hickey ("Hickey") and Carolyn Neale ("Neale") were allegedly present at the time of the incident. Despite the court's instruction that Plaintiff be transported to the hospital, Hickey and Neale supposedly directed the

---

[1] Plaintiff alleged the following facts in his Complaint. The Court assumes Plaintiff's allegations to be true and views all facts in the light most favorable to Plaintiff.
[2] It is unclear from Plaintiff's Complaint how and/or where Plaintiff received these injuries.
[3] Plaintiff is no longer incarcerated.

2

responding ambulance to return Plaintiff to NNRJ without IVs or other medical treatment.

Between October 22, 2007 and mid-May 2008, Plaintiff completed a series of inmate request forms describing his MCV physician's instructions to obtain an MRI, his months-long wait for prison officials to make the requisite appointments, and his previous requests for medical assistance, which had either gone unanswered or otherwise failed to address his grievances. Many of the requests were submitted simply to "Medical."[4] Others, however, were submitted specifically to the named Defendants. Based on these grievances and other similar instances, Plaintiff contends that each of the named Defendants were deliberately indifferent to his serious medical needs. The specific allegations with respect to each Defendant are detailed in Section III.B., below.

Plaintiff was finally returned to MCV for follow-up care on February 8, 2008 and again on April 15, 2008. Surgery for Plaintiff's wrist and hand was scheduled for May 16, 2008, and he underwent surgery on that date. Plaintiff's neck injuries, however, were allegedly untreated for over a year. As a result, Plaintiff maintains that he can no longer undergo corrective surgery.

---

[4] Plaintiff alleges he submitted requests to "Medical" on October 22, 2007; November 25, 2007; December 19, 2007; and January 9, 2008. NNRJ staff responded to the first three requests, noting that Plaintiff was seen by Dr. Reese and NNRJ was working on getting an appointment for Plaintiff at MCV. Plaintiff's January 9, 2008 request, which noted that MCV told Plaintiff's family no one from NNRJ contacted MCV to set up an appointment, received no response.
    Additionally, Plaintiff alleges he complained to a Ms. Fredrick on November 11, 2007 that no one had responded to his grievances. On December 31, 2007, the "NNRC 'P'" responded, "I apologize, I have been out for the past couple of weeks."

3

In addition to Plaintiff's claim concerning medical treatment, Plaintiff alleges Defendant Captain Sudduth ("Sudduth") and/or Defendant Major Ted Hull ("Hull")[5] violated his First Amendment rights by ordering him to serve two months in isolation in retaliation for Plaintiff's continued communications with his family and repeated requests for medical treatment. When exactly Plaintiff was placed in isolation is not clear from the Complaint, but it appears to have occurred sometime after Plaintiff passed out in court on August 2, 2007.

On July 12, 2010, Plaintiff filed a Complaint in the Circuit Court for the City of Richmond, alleging violations of his First and Eighth Amendment rights, enforceable under 42 U.S.C. § 1983. The Defendants removed the state-court action to this Court on July 15, 2010, pursuant to 28 U.S.C. § 1441 *et seq*. The Defendants filed the instant Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on July 29, 2010.

## II. STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure provides that "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Traditionally, "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint . . . [I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

---

[5] Major Ted Hull was improperly sued as "Major Ted Hall."

4

*Bell Atlantic Corp. v. Twombly* amplified the standard, noting that, to survive a motion to dismiss, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). While Rule 8 does not require "detailed factual allegations," it does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* at 555, 127 S. Ct. at 1964–65. As Judge Niemeyer noted in *Francis v. Giacomelli*, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

Thus, a complaint containing facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966 (internal citation omitted). A complaint achieves facial plausibility when it contains sufficient factual allegations supporting the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127 S. Ct. at 1965; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193.

In short, the Court must assume plaintiff's well-pleaded factual allegations to be true, and determine whether those allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.

### III. ANALYSIS

The Defendants argue for dismissal on three grounds: (1) qualified immunity; (2) failure to state an Eighth Amendment claim; and (3) failure to state a First Amendment claim. These arguments are addressed in turn below.

A. *Qualified Immunity*

Qualified immunity generally shields government officials exercising discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).

A defendant invoking qualified immunity must do more than mention its existence and demand dismissal of the suit. The defendant must (1) identify the specific right allegedly violated "at the proper level of particularity," *Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007); (2) brief, with full supporting authority, why the right was not so clearly established as to put a reasonable official on notice of any legal obligations; and (3) describe with particularity the factual basis supporting the assertion that a reasonable official in the defendant's situation would have believed his conduct was lawful. *See Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990).

The Defendants' cursory assertion of qualified immunity fails to address these points. The Defendants have simply asserted that Plaintiff has no constitutionally-recognized right to grievance procedures. This argument fails to provide an adequate foundation to rebut Plaintiff's claim. Even if it did, the Defendants have neither defined the right at the proper level of particularity, nor explained why a reasonable officer in the

Defendants' situation would have believed his conduct was lawful. Accordingly, the Defendants' Motion to Dismiss based on qualified immunity is denied at this stage.[6]

B. *Eighth Amendment*

It is well settled that prisoners can sue prison officials for failure to provide reasonable medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976). A prisoner alleging a violation of his Eighth Amendment rights on these grounds must allege that (1) he was deprived of medical care in an "objectively, sufficiently serious" way, and that (2) the prison official possessed "a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 828, 834, 114 S. Ct. 1970, 1977 (1994). A plaintiff may satisfy this first element by showing that he has a sufficiently serious medical condition. *Estelle*, 429 U.S. at 104, 97 S. Ct. at 291; *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). The second element requires a plaintiff to show "deliberate indifference" on the part of the defendants. *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977.

Plaintiff has alleged what appears to be a sufficiently serious medical condition. Specifically, Plaintiff contends that he suffered a broken neck[7] (Compl. ¶ 3) and injuries to his left hand and wrist which required surgery (Compl. ¶ 27). The Defendants do not appear to contest the nature of Plaintiff's injuries. (*See* Def.'s Mot. Dismiss 4–6.) Even if they did, the Fourth Circuit in *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978), recognized a broken arm as a sufficiently serious condition. Plaintiff's alleged injuries appear to be at least as serious as those alleged in *Loe*.

---

[6] Of course, the Defendants may renew their claim of qualified immunity following discovery if appropriate grounds are developed.

[7] Specifically, Plaintiff alleges he suffered "a displaced fracture through the left lamina of C7 on his cervical spine extending into the left inferior and superior articular processes of C7 and through the left c6/7 facet." (Compl. ¶ 3.)

The Defendants do challenge the sufficiency of the pleaded facts to support a cause of action under the Eighth Amendment. Because different standards apply to Neale and the non-medical defendants, *see Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), these claims are addressed separately below.

1. *Defendant Nurse Neale*

To establish deliberate indifference on the part of a health care provider, the plaintiff must show that treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851. Deliberate indifference may be demonstrated by actual intent or reckless disregard. *Id.* A defendant acts recklessly by disregarding a substantial risk of danger of which the defendant knows or should know. *Id.*

Mere negligence or malpractice does not violate the Eighth Amendment. *Estelle*, 429 U.S. at 106, 97 S. Ct. at 292 (1976); *Miltier*, 896 F.2d at 852. However, failure to respond to an inmate's known medical needs raises an inference of deliberate indifference toward those needs. *Miltier*, 896 F.2d at 853; *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986).

In this case, Plaintiff alleges Neale periodically saw Plaintiff at NNRJ, but she did not provide adequate care or arrange follow-up visits as directed by physicians. (Compl. ¶ 10.) Plaintiff's Complaint invites the inference that Neale knew of Plaintiff's discharge from MCV and of the instructions to schedule a follow-up visit, (*see* Compl. ¶ 19), yet failed to arrange his return to MCV for several months despite his numerous complaints and requests for treatment (*see* Compl. ¶¶ 3, 11, 13–20, 26). Plaintiff also alleges he sent

written requests to "Medical" on February 18, 2008; February 24, 2008; and May 12, 2008. (Compl. ¶ 25.) Plaintiff contends Neale should have been aware of these requests by virtue of her position as a health care provider. (*See* Pl.'s Resp. Def.'s Mot. Dismiss 5.)

Additionally, Plaintiff asserts that Neale, along with Hickey, directed an ambulance to disregard a court order to transport him to a hospital and instead return Plaintiff to jail without medical treatment. (Compl. ¶ 8.)

It can be reasonably inferred from Plaintiff's allegations that Neale failed to respond to Plaintiff's known medical needs. Unrebutted, the Defendants' Motion will be denied with respect to Neale.

2. *The Non-Medical Defendants*

To establish supervisory liability under Section 1983, the plaintiff must show that (1) "the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff;" (2) the supervisor's response was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) there existed "an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Straud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted); *see also Miltier*, 896 F.2d at 854.

Supervisory liability is not based upon *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those

9

committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (internal citations omitted); *see also Miltier*, 896 F.2d at 854. Deliberate indifference on the part of subordinate medical personnel alone is not enough to implicate supervisory personnel. *Miltier*, 896 F.2d at 854.

The test for deliberate indifference is subjective. *Farmer*, 511 U.S. at 829, 114 S. Ct. at 1974. "Deliberate indifference requires a showing that the defendants . . . actually knew of and ignored a detainee's serious need for medical care." *Young v. City of Mount Ranier*, 238 F.3d 567, 575–76 (4th Cir. 2001); *see also Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979. It is not sufficient that a reasonable official would have been aware of the condition. *Id.* at 842, 843 n.8, 114 S. Ct. at 1981, 1982 n.8. A prison official cannot, however, escape the obvious by burying his head in the sand. *Id.*

The Defendants assert that Plaintiff's Complaint fails to state a claim because "[t]here are no allegations that [the non-medical Defendants] personally interfered with doctor's [*sic*] treatment or authorized or were indifferent to a physician's misconduct." (Def.'s Mot. Dismiss 5.) The Defendants argue that, because an inmate has no Constitutional right to a prison grievance procedure, "an unsatisfactory response to a grievance cannot form the basis for a § 1983 claim." *Id.* The Defendants fail to grasp the nature of Plaintiff's claim. Plaintiff does not focus on the grievance procedures themselves or on the non-medical Defendants' failure to respond. Rather, Plaintiff seeks to establish that the Defendants were somehow subjectively aware of the medical staff's failure to provide necessary treatment for his serious injuries, and that their failure to take

corrective action amounted to deliberate indifference. That said, Plaintiff's allegations, taken in their best light, only state a claim against several of the named Defendants.

a. Defendant Hickey

Plaintiff's Complaint states an actionable claim against Defendant Hickey. Plaintiff maintains Hickey was present when Plaintiff passed out in court on August 2, 2007. Hickey and Neale allegedly directed the responding ambulance to return Plaintiff to jail without medical treatment, despite a court instruction to transport Plaintiff to the hospital. Viewed in the light most favorable to Plaintiff, his allegations support a plausible inference that Hickey actually knew of and ignored Plaintiff's serious need for medical care.

b. Defendant Sudduth

Plaintiff failed to state a claim against Sudduth. Plaintiff alleges he made written requests to Sudduth on January 10, 2008; January 20, 2008; and January 25, 2008. (Compl. ¶¶ 16, 19, 20.) Although Sudduth allegedly did not respond to the January 10 request, he responded within two days to the January 20 request by noting that Nurse Neale would confer with Dr. Reese about Plaintiff's medical condition. (Compl. ¶ 19.) Plaintiff's Complaint also notes a January 22 response from Sudduth which stated, "I have spoken with Mrs. Neale who will speak with Dr. Reese regarding your medical condition." (Compl. ¶ 20.) Further, Sudduth responded to Plaintiff's January 25 request by stating, "It is my understanding you were re-assessed by Dr. Reese on 1/29/09 and the medical department is attempting to address your needs." (Compl. ¶ 23.)

11

Plaintiff's Complaint also includes a January 30, 2008 response from Sudduth stating, "Duplicate." Plaintiff alleges additional requests were submitted to Sudduth on February 5, 2008; February 7, 2008; February 21, 2008; February 25, 2008; May 7, 2008; May 11, 2008; May 14, 2008; October 23, 2008; and November 2, 2008, but the Complaint does not indicate the nature of these requests. (*See* Compl. ¶ 25.)

These allegations do not cross the line between possibility and plausibility of entitlement to relief. Prison officials are entitled to rely upon their health care providers' expertise. See *Miltier*, 896 F.2d at 854. Given Sudduth's responses, Plaintiff's Complaint indicates Sudduth did just that. Further, many of Plaintiff's alleged grievances to Sudduth occurred after Plaintiff received the requested follow-up treatment for his wrist, and Plaintiff has not alleged the contents of those grievances. (*See* Compl. ¶¶ 25–26.) Plaintiff's allegations fall short of showing a plausible claim that Sudduth acted with deliberate indifference. Accordingly, the Eighth Amendment claim will be dismissed without prejudice as to Sudduth.

### c. Defendant Hull

Plaintiff's Complaint states a claim against Hull. Plaintiff alleges he submitted a grievance to Hull on January 20, 2008 which described his severe pain and numerous unanswered requests to "Medical," Sudduth, and Defendant Captain Turner ("Turner"). (Compl. ¶ 20.) Hull apparently did not respond. Plaintiff submitted a similar grievance on January 24, 2008, this time noting that two months had passed since MCV instructed him to schedule follow-up care, and Plaintiff felt Hull was acting with "deliberate indifference" to Plaintiff's needs. (Compl. ¶ 22.) Again, Hull did not respond. Plaintiff

alleges he sent additional requests to Hull on February 7, 2008; March 2, 2008; May 14, 2008; May 19, 2008; May 28, 2008; and November 8, 2008 to no avail.

Although it might be inferred that Hull delegated or otherwise dealt with the requests within prison management,[8] the Court cannot dismiss the claim against Hull without further development of the facts.

### d. Defendant Turner

Plaintiff's allegations as to Turner withstand a motion to dismiss. Plaintiff alleges he completed an inmate request form addressed to Turner on January 16, 2008, which described his neck and wrist pains and his many unanswered complaints to prison officials. (Compl. ¶ 17.) Plaintiff's Complaint shows no response from Turner, but rather a January 30, 2008 response from Sudduth stating, "Duplicate." (Compl. ¶ 17.) Plaintiff alleges he submitted additional requests to Turner on February 15, 2008; February 16, 2008; and September 24, 2008, but his Complaint does not indicate the nature of these requests. Although the allegations as to Turner are minimal, they nonetheless permit a reasonable inference of deliberate indifference.

### e. Defendant Frazier

Plaintiff fails to state a cause of action as to Defendant Superintendent Jeffery Frazier ("Frazier"). Plaintiff's Complaint indicates only one request was submitted to Frazier. (*See* Compl. ¶ 25.) This request was made on May 28, 2008—long after Plaintiff received follow-up care on his wrist. (Compl. ¶¶ 25–26.) Moreover, Plaintiff has not alleged that this request put Frazier on notice of any wrongdoing by subordinate

---

[8] Plaintiff's Complaint indicates Sudduth responded to these requests. (*See* Compl. ¶¶ 20, 22.)

prison staff. This lone allegation does not state a plausible claim for deliberate indifference.[9] Plaintiff's claim against Frazier will be dismissed without prejudice.

It remains open to the non-medical Defendants to prove, for example, that they were unaware of the underlying facts, believed the risk was insubstantial, or responded reasonably. These issues cannot, however, be appropriately resolved on a motion to dismiss.

## C. *First Amendment*

It is well settled that prison officials may not impinge upon a prisoner's First Amendment rights unless the interference is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 88–89, 107 S. Ct. 2254, 2251 (1987); *Altizer v. Deeds*, 191 F.3d 540, 549 (4th Cir. 1999). Plaintiff alleges Sudduth and/or Hull violated his First Amendment rights by retaliating against him for communicating with his family and insisting on medical treatment. (Compl. ¶¶ 9, 59–64.)

The Defendants, citing *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994), argue that Plaintiff failed to state a claim because Plaintiff has no Constitutional right to grievance procedures. (Def.'s Mot. Dismiss 6–7.) Plaintiff counters that *Adams* does not control the immediate facts. This Court agrees with Plaintiff.

---

[9] Plaintiff alleges Frazier knew of other instances in which NNRJ failed to provide medical attention to its inmates on a timely basis, "including but not limited to" the case of one Marc Harris, who purportedly did not receive medical treatment for his broken wrist. (Compl. ¶ 10 (citing *Harris v. N. Neck Reg'l Jail Bd. Auth.*, No. 3:07CV701, 2008 U.S. Dist. LEXIS 77271 (E.D. Va. Sept. 30, 2008)).) *Harris* does not help Plaintiff's case. As explained above, Plaintiff must allege that the prison official tacitly authorized or was indifferent to the prison physicians' constitutional violations. *See Miltier*, 896 F.2d at 854. The claim in *Harris* was dismissed because no constitutional violation occurred. *See Harris v. N. Neck Reg'l Jail Bd. Auth.*, No. 3:07CV701, 2009 U.S. Dist. LEXIS 27596 (E.D. Va. Mar. 30, 2009).

While the court in *Adams* did state that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state," 40 F.3d at 75, *Adams* has not been applied to foreclose retaliation-based claims. Rather, courts in this district—including this Court—have applied *Adams* and held that a prison official's failure to comply with the grievance procedures is not actionable under Section 1983. *See, e.g., Bradley v. Wheeler*, No. 1:09cv371, 2009 U.S. Dist. LEXIS 75241, at *12 (E.D. Va. Aug. 25, 2009) (dismissing § 1983 claim based on prison officials' failure to respond to plaintiff's grievance forms); *Wynn v. Smith*, No. 1:09cv639, 2009 U.S. Dist. LEXIS 65187, at *11 (E.D. Va. July 28, 2009) (dismissing § 1983 claim where prison officials failed to provide grievance forms); *Chandler v. Cordova*, No. 1:09cv483, 2009 U.S. Dist. LEXIS 44146, at *9 n.3 (E.D. Va. May 26, 2009) (dismissing § 1983 claim based on prison officials' failure to respond to grievance); *Banks v. Nagle*, No. 3:07CV419, 2009 U.S. Dist. LEXIS 36997, at *9 (E.D. Va. May 1, 2009) (dismissing § 1983 claim where prison officials failed to properly file grievances).

Unlike the cases cited above, Plaintiff is not alleging a failure of access to the grievance procedures. Rather, Plaintiff is alleging that prison officials retaliated against him for filing grievances.

Although the Fourth Circuit has not yet published an opinion on this point, other Circuits agree that prison officials may not retaliate against a prisoner for exercising his First Amendment rights. *See, e.g., Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2009) (holding plaintiff stated a claim where he alleged prison officials destroyed property, threatened transfer, and assaulted him in retaliation for filing grievance and

15

lawsuit); *Dobbey v. Ill. Dep't of Corrs.*, 574 F.3d 443, 447 (7th Cir. 2009) (reversing district court dismissal where plaintiff alleged officials retaliated against him for filing grievance after prison guard hung noose in control room); *Bibbs v. Early*, 541 F.3d 267, 272 (5th Cir. 2008) (holding plaintiff stated a claim where prison officials allegedly subjected him to sub-freezing temperatures for four consecutive nights in retaliation for filing grievances); *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006) (holding plaintiff stated a claim where plaintiff alleged retaliatory punishment for filing grievance); *Gill v. Pdilypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (holding plaintiff stated a claim where prison officials allegedly issued false misbehavior reports and sentenced him to three weeks in keeplock in retaliation for using grievance system); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996) (noting that retaliation in response to filing grievances violates clearly established constitutional law).

This Court is persuaded by the weight of authority. Plaintiff has stated a Section 1983 claim against Sudduth and Hull for violation of his First Amendment rights. Accordingly, the Defendants' Motion will be denied on this ground.

## V. CONCLUSION

The Defendants have not established entitlement to qualified immunity at this stage. For the foregoing reasons, the Defendants' Motion to Dismiss the Eighth Amendment claim will be denied as to Defendants Neale, Hickey, Hull, and Turner. The Motion will be granted without prejudice as to Defendants Sudduth and Frazier. The

Defendants' Motion to Dismiss the First Amendment claim against Defendants Sudduth and Hull will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Sept. 8, 2010
Richmond, VA